UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PIERCE COUNTY, a political subdivision of the State of Washington,<br><br>Plaintiff,<br>v.<br><br>M.A. MORTENSON COMPANY, a Minnesota corporation,<br><br>Defendant. | CASE NO. 19-cv-05041-RJB<br><br>ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND PLAINTIFF'S CROSS-MOTION FOR PRELIMINARY INJUNCTION TO STAY ARBITRATION |

THIS MATTER comes before the Court on Defendant's Motion to Compel Arbitration (Dkt. 7 (originally filed as Petition to Compel Arbitration and later corrected by Praecipe (Dkt. 10)) and Plaintiff's Cross-motion for a Preliminary Injunction to Stay Arbitration (Dkt. 15). The Court has reviewed these motions and the remaining record. For the reasons below, the Court should grant Defendant's Motion to Compel Arbitration (Dkt. 7) as corrected by Praecipe (Dkt. 10) and deny as moot Plaintiff's Cross-motion for Preliminary Injunction to Stay Arbitration (Dkt. 15).

# I. BACKGROUND

In January 2013, Plaintiff Pierce County ("the County"; also referred to as "Owner" in filings) entered into a contract ("the Contract") with Defendant M.A. Mortenson Company (Mortenson; also referred to as "Contractor" in filings) for construction management and general contractor services. Dkt. 18.

Under the Contract, Mortenson managed the work of subcontractors, including reviewing subcontractor requests for additional resources for changes in the work. Dkt. 15. If the Parties could not reach an agreement regarding work changes, Mortenson's only remedy was "to file a Claim with Owner[.]" Dkt. 18, at 65. The Contract provides:

> Contractor shall file its Claim within 45 Days from the date of Owner's Final Offer[.]
>
> The Claim shall be deemed to cover all changes in cost and time … to which Contractor may be entitled. It shall be fully substantiated and documented. At a minimum, the Claim shall contain the following information:
>
> []
>
> 9. A statement certifying, under penalty of perjury, that the Claim is made in good faith, that the supporting cost and pricing data are true and accurate to the best of Contractor's knowledge and belief, that the Claim is fully supported by the accompanying data, and that the amount requested accurately reflects the adjustment in the Contract Sum or Contract Time for which Contractor believes Owner is liable.
>
> []
>
> After Contractor has submitted a fully documented Claim that complies with all applicable provisions [above], Owner shall respond ... to Contractor [] with a written decision [within sixty days.]
>
> []

> Any Claim of the Contractor against the Owner for damages, additional compensation, or additional time, shall be conclusively deemed to have been waived by the Contractor unless made in accordance with the requirements of this Section.

Dkt. 18, at 65–66.

The Contract provides that, if the Parties cannot reach a Claims agreement,

> Contractor shall provide Owner with a written demand for arbitration. No demand for Arbitration of any such Claim shall be made later than 30 Days after the date of Owner's decision on such Claim; failure to demand arbitration within said 30 Day period shall result in Owner's decision being final and binding upon Contractor and Subcontractors.
>
> []
>
> If either party seeks to initiate arbitration, notice of the demand for arbitration shall be filed with the other party. The parties shall mutually agree on a single arbitrator to adjudicate the claim(s). In the event the parties cannot agree, an arbitrator shall be appointed by the Seattle office of JAMS. Arbitration shall be in accordance with the Construction Industry Arbitration Rules of AAA, but the AAA shall not be used for administration of the arbitration proceedings unless separately agreed by the parties. Upon request of either party, the parties shall mediate the claim(s) utilizing the Construction Industry Mediation Procedures, after mutually agreeing on the mediator. The AAA shall not be used to administer the mediation unless separately agreed by the parties.
>
> []
>
> All Claims arising out of the Work shall be resolved by arbitration. [] No independent legal action relating to or arising from the Work shall be maintained.

Dkt. 18, at 66 (emphasis in original removed).

On August 27, 2018, the County made Final Offers for multiple changes in the work reported by Mortenson. Dkt. 15, at 3. On October 10, 2018, forty-four days after the County's Final Offers, Mortenson submitted over 200 Claims to the County. Dkt. 15, at 3. The County alleges that, of the Claims submitted, twenty-eight were certified by Mortenson, two were

uncertified, twenty-one contained an unsworn statement from a subcontractor, and the rest contained a certification signed by a subcontractor. Dkt. 15, at 3.

The County alleges that it "notified Mortenson that most of the purported Claims submitted on October 10, 2018, had not been certified as required by the [Claims Procedure terms] of the Contract." Dkt. 15, at 3. The County alleges that it informed Mortenson that it "would, nonetheless, informally consider the merit of said claims if Mortenson provided the required certification, albeit untimely." Dkt. 15, at 4. On November 14, 2018, the County served on Mortenson a Demand for Arbitration (Dkt. 8-1, at 7–12), seeking declarations by the arbitrator as to whether, under the Contract, (1) Mortenson was required to certify each Claim itself and (2) Morten had waived all Claims it did not certify itself. Dkt. 8-1, at 9.

In its answer, dated November 28, 2018, Mortenson objected that the arbitrator could not grant the Declaratory relief sought by the County and argued that the Claims certifications were properly satisfied by subcontractor certification. Dkts. 8-1, at 266–69; and 16, at 3. Mortenson declined in its answer to use the arbitrator proposed by the County and filed for arbitration of the dispute with JAMS. Dkts. 8-1, at 268–69; and 16, at 3.

On December 21, 2018, the County filed this suit in Pierce County Superior Court seeking declaratory relief. Dkt. 1-2. On January 14, 2019, Mortenson removed the case from state court to this Court on diversity jurisdiction. Dkt. 1.

Mortenson filed the instant Motion to Compel Arbitration (Dkt. 7) as corrected by Praecipe (Dkt. 10). The County responded in opposition to the motion and filed a cross-motion (Dkt. 15) for a preliminary injunction enjoining Mortenson from "further prosecuting an improper arbitration." Dkt. 15, at 4. Mortenson responded in opposition to the County's cross-

motion and replied in support of Mortenson's Motion to Compel Arbitration. Dkt. 16. The County replied in support of its cross-motion. Dkt. 19.

## II. DISCUSSION

### A. ARBITRATION LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C., established a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011). Creating "a body of federal substantive law of arbitrability," the FAA applies to "any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in … a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Pursuant to the FAA, arbitration agreements are "valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (emphasis in the original) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). "If the response is affirmative on both counts, then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp.*, 207 F.3d at 1130. If the court determines the matter is subject to arbitration, it may either stay the matter pending arbitration or dismiss it. *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

## B. EXISTENCE OF AGREEMENT TO ARBITRATE

In assessing whether an arbitration agreement or clause is enforceable, the Court should apply ordinary state-law principles that govern the formation of contracts. *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217–18 (9th Cir. 2008). Accordingly, the Court will apply Washington law.

Washington follows the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503 (2005). "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Id.* "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Contracts are viewed as a whole; particular language is interpreted in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.,* 142 Wn.2d 654, 669–70 (2000).

The gateway issues identified in *Chiron* above are subject to arbitration if the parties' arbitration agreement "clearly and unmistakably" provides that a determination of arbitrability is itself subject to arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986); *Brennan v. Opus Bank,* 796 F.3d 1125, 1133 (2015) ("A court must enforce an agreement that … clearly and unmistakably delegates arbitrability questions to the arbitrator."). "[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan*, 796 F.3d at 1130 (2015). Here, determination of arbitrability is subject to arbitration because the Parties clearly and unmistakably incorporated the AAA rules in the Contract: "**Arbitration shall be in accordance with the Construction Industry Arbitration Rules of AAA[.]**" Dkt. 18, at 66 (emphasis in original).

When parties agree to incorporate the AAA rules, the court need only determine whether the agreement is valid and enforceable. *Brennan*, 796 F.3d at 1132.

The Parties' arbitration agreement incorporating the AAA rules is valid and enforceable. To the extent that the County argues that such an agreement is unconscionable (see Dkt. 15, at 8–9), that argument is without merit. The Contract's arbitration agreement incorporating the AAA rules is not one-sided or overly harsh, and it appears to provide the Parties with an agreed-upon, speedy, and adequate form of dispute resolution.

### C. WAIVER OF RIGHT TO ARBITRATE

"A party seeking to prove waiver of a right to arbitrate must demonstrate: (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1412 (9th Cir. 1990). Parties arguing for waiver of the right to arbitrate have "a heavy burden of proof." *Id.* "Any examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).

First, Mortenson's knowledge of an existing right to compel arbitration is undisputed. Dkt. 16, at 13–17.

Second, Mortenson's conduct was not inconsistent with its right to arbitrate. Although Mortenson objected to the availability of declaratory relief in arbitration, it did not object to the arbitrability of the Claims certification dispute itself. *See* Dkt. 16, at 14–16. Additionally, it appears that Mortenson raised its objection pursuant to the AAA rules, which provide: "A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim

no later than filing of the answering statement to the claim or counterclaim that gives rise to the objection." Dkt. 17, at 23.

To the extent that the County argues that Mortenson's removal of the case to this Court constituted conduct inconsistent with its right to arbitrate, that argument is wholly without merit. *See Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 562 (7th Cir. 2008); Dkt. 16, at 15–16.

Third, Plaintiff has not been prejudiced by conduct inconsistent with the right to arbitrate. As discussed above, Mortenson's conduct was consistent with its right to arbitrate.

### D. CROSS-MOTION FOR PRELIMINARY INJUNCTION TO STAY ARBITRATION

Because the Court should grant Defendant's Motion to Compel Arbitration (Dkt. 7), the Court should deny as moot Plaintiff's Cross-motion for Preliminary Injunction to Stay Arbitration (Dkt. 15).

### E. CONCLUSION

There exists between the Parties a valid and enforceable arbitration agreement, and Mortenson has not waived its right to arbitrate. Therefore, the Court should grant Mortenson's Motion to Compel Arbitration (Dkt. 7) as corrected by Praecipe (Dkt. 10) and deny as moot Plaintiff's Cross-motion for Preliminary Injunction to Stay Arbitration (Dkt. 15). This case should be dismissed.

### III. ORDER

Therefore, it is hereby **ORDERED that:**

- Defendant's Motion to Compel Arbitration (Dkt. 7) as corrected by Praecipe (Dkt. 10) is **GRANTED;**

ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION AND PLAINTIFF'S CROSS-MOTION FOR PRELIMINARY INJUNCTION TO STAY ARBITRATION - 8

- Plaintiff's Cross-motion for Preliminary Injunction to Stay Arbitration (Dkt. 15) is **DENIED** as moot; and

- This case is **DISMISSED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 11th day of March, 2019.

*[signature: Robert J. Bryan]*

ROBERT J. BRYAN
United States District Judge